Commonwealth *v.* Metz, Appellant.

Argued March 17, 1958.  Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Roy T. Clunk,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

Opinion by Mr. Justice Cohen, September 29, 1958:

The defendant, Roy James Metz, was arraigned upon an indictment charging him with the murder of his wife, Elizabeth, to which indictment he pleaded not guilty.[1]  The trial which followed was entirely free from prejudicial error and the case was submitted to the jury after proper instructions by the trial judge. The jury returned a verdict of guilty of murder in the first degree and recommended the penalty of life im-

---

[1] A plea of guilty was initially entered, but during the taking of testimony for the determination of the degree of the offense and the penalty to be imposed therefor, the defendant gave an account of the shooting which indicated that the killing was accidental. Accordingly, the trial judge properly ordered the plea of guilty stricken from the record.

prisonment. When motions for a new trial and in arrest of judgment were refused, the defendant took this appeal from the judgment of sentence.

The sole specification of error is that the verdict is against the weight of the evidence because it is based upon testimony which is contradicted by incontrovertible physical facts.

The Commonwealth's theory of the case may be summarized briefly: The defendant's intense jealousy and mistreatment of his wife led her to file a surety of the peace charge against the defendant and to seek a divorce. When, following their estrangement, Mrs. Metz refused defendant's demands to discontinue the divorce action and to resume living with him, the defendant determined to kill her. To establish the deliberate killing by the defendant, the Commonwealth called three eyewitnesses. We quote with approval from the learned trial judge's abstract of their testimony. ". . . [Two disinterested witnesses] passed the defendant's first floor apartment, which fronts on the street, at the time of the shooting, and observed what occurred. . . . They impressed the trial judge as being thoroughly honest, reliable, and careful witnesses. From their testimony, it is clear that, at the time of the shooting, Elizabeth Jean Metz was crouching or kneeling against the radiator, with her head down on her arms, facing the window; that the defendant was standing directly in back of her and over her; and that the defendant discharged the gun along the left side of the head of Mrs. Metz.

"The testimony of Joyce Metz, the fourteen-year old daughter of Mrs. Metz by a former marriage, fits in with the testimony of these two disinterested witnesses. The defendant had pushed Mrs. Metz towards and against the radiator, and as she went down with her

head on her hands, the defendant, standing behind her, shot her."[2]

Metz's version of the circumstances surrounding the killing was as follows: He was in love with his wife and greatly disturbed upon finding that she was about to divorce him. While they were separated he exerted every effort to effect a reconciliation, but to no avail. Finally, in desperation, one month before the date of the tragedy he attempted to frighten his wife into discontinuing the divorce proceedings by brandishing his gun and threatening to shoot her. The death of Elizabeth Metz, however, was not the result of the carrying out of this threat. Her death came about, the defendant recounted, in the following manner: In attempting, once again, to win back his wife's affections, Metz threatened to commit suicide by shooting himself. His wife ran, screaming, to take the gun away from him and in the ensuing scuffle, the gun accidentally discharged, killing Mrs. Metz who fell atop the radiator.

The critical question of fact thus put at issue for the jury to resolve was whether, as the defendant related, Elizabeth Metz's death resulted from an accidental shot fired in a scuffle with her husband which caused her to fall across the radiator, or whether, as the Commonwealth maintained, it resulted from a deliberate shot fired by her husband who stood behind and above her as she was already in a crouched position over the radiator.

---

[2] "After the defendant shot his wife, he went to the club of the Veterans of Foreign Wars which is near his home. He asked for two shots of whiskey, and, after drinking them straight down, he reached with his hand across the bar, shook hands with Mr. Hughes, the bartender, who was a friend of his, and said, 'I'll see you buddy,' and then he said, 'I just shot her.' "

Defendant argues that the nature of the fatal bullet wound demonstrates that the testimony given by the Commonwealth's witnesses could not have been a true account of his wife's death. Metz bases this contention upon statements made by the coroner's physician, (who performed the post mortem examination), that the bullet entered the left temple of the decedent about "three-eighths of an inch below the level of the external ear"; that the wound and the area surrounding it contained powder burns; that the bullet passed laterally, slightly upward and forward, and lodged behind the right eye. Since two of the Commonwealth's witnesses placed the decedent in a kneeling position with her face in her hands at the time that the defendant, standing behind her, fired the shot from a gun held in his right hand, and the third testified that the defendant was to the rear and several feet away from the decedent at the time the shot was fired, the defendant suggests that it would have been impossible for the wound described by the medical examiner to have been inflicted in the manner testified to by any of these witnesses.

Even if we were to agree with the defendant, (which we do not), that there is a necessary conflict between the nature of the wound and the testimony of the Commonwealth's witnesses as to how it was inflicted, the award of a new trial is not required. All the witnesses were trying to recall as best they could what they had seen in a brief moment as they viewed an emotionally charged scene—two as they casually glanced in through the window, and the third as she rushed into the room after hearing a scream. Under such circumstances it would not be unusual if they were mistaken in their recital of the details of the relative positions of the defendant and the decedent at the instant of the shooting. But, on the broad and

decisive issue of the case, the physical facts are not in conflict with the testimony of the Commonwealth's eyewitnesses. These witnesses all testified that Elizabeth Metz was not shot during the course of a struggle in which she attempted to wrest a gun from her husband so as to prevent his suicide. The three eyewitnesses stated clearly that at the instant of the shooting there was no struggle for the gun, that the decedent was crouched in some fashion over the radiator, that the defendant was behind and physically separated from her, that the gun was in his sole possession and control, and that he alone discharged the gun. This testimony along with the Commonwealth's other evidence fully justified the jury's finding that the defendant wilfully, deliberately and with premeditation shot and killed his wife.

Our review of the record discloses no reversible error. Accordingly, the judgment is affirmed and the record remitted to the court below so that the sentence imposed may be carried out.

Judgment affirmed.